UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICKEY HAWKINS,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> **MARK T. ESPER, SECRETARY,** ) <br> **DEPARTMENT OF THE ARMY,** ) <br> **ET AL.,** ) <br> ) <br> **Defendants.** | Civil Action Number <br> **5:18-cv-00127-AKK** |

## MEMORANDUM OPINION AND ORDER

Rickey Hawkins, proceeding *pro se*, brings this action against Mark T. Esper, as Secretary for the Department of the Army,[1] HQAMC/LOGSA, a sub-agency of the United States Army, and HQAMC/LOGSA supervisors Mark Witt, Danny Bordeaux, and Fred Willis. *See* doc. 19. Hawkins alleges claims, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, for employment discrimination on the bases of race, color, gender, disability, and retaliation. *Id*. at 3. The Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). *See* doc. 26. The motion is fully briefed, doc. 36, and ripe for review. For the reasons stated below—in particular Hawkins' failure to

---

[1] Hawkins named Ryan D. McCarthy, former Acting Secretary of the Army, as the principal defendant in this action. Doc. 19 at 1. Mark T. Esper was sworn in as Secretary of the Army on November 17, 2017, doc. 26 at 1, and "is automatically substituted as a party" for former Acting Secretary McCarthy pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

properly serve Secretary Esper, because Hawkins cannot sue a sub-agency of the Army or his supervisors, and because Hawkins failed to exhaust his claims against the Secretary—the motion is due to be granted.

I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Additionally, because Hawkins is proceeding *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Hawkins, an African-American man, doc. 19 at 24, had worked as a civilian employee for the Army for thirty years and as a Senior Leader for eighteen years when he approached his Equal Employment Opportunity Commission officer with complaints of discrimination, harassment, and disparate treatment on the basis of

---

[2] Hawkins' allegations are presumed true for purposes of Fed. R. Civ. P. 12(b)(6). As such, the facts are taken from the Second Amended Complaint, doc. 19. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (citations and quotation marks omitted). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *See Iqbal*, 556 U.S. at 662.

3

race. *Id*. at 20. Ultimately, Hawkins filed six complaints with his EEOC office between January 2016 and October 2017. Doc. 7 at 13. Four of these complaints are at issue in this case.

In his first complaint, EEO Complaint 289, Hawkins alleged claims against his supervisors, Defendants Mark Witt and Danny Bordeaux, as well as a "Mr. Dwyer," all white men, for discrimination, harassment, disparate treatment, and retaliation. Doc. 19 at 20. Allegedly, in response to this initial complaint, Hawkins' supervisors began to "come after [him]," creating a "toxic environment" and "forc[ing him] . . . to take another position." *Id.* Based on this alleged conduct, Hawkins sought mental health care for stress, and his psychologist advised him to avoid his workplace. *Id.* In keeping with this advice, Hawkins used "[his] personal leave . . . in order not to have a nervous breakdown at work." *Id.*

This complaint was ultimately resolved through a Negotiated Settlement Agreement through which Hawkins received a new supervisor. Docs. 26-1 at 4. But, Hawkins alleged thereafter that one of his former supervisors breached the terms of the Agreement by informing the new supervisor, Defendant Fred Willis, of Hawkins' past complaint. Doc. 19 at 20. After investigation, the Army issued a Final Agency Decision finding no breach, *see* doc. 26-5, and the Office of Federal Operations (OFO) affirmed, doc. 26-1 at 3-4.

The incidents at issue in Hawkins' second complaint, EEO Complaint 2385,

4

concerned the conduct of the new supervisor, Willis. Doc. 19 at 20. Allegedly, after a conversation with Hawkins' previous supervisor, Willis "began to treat [Hawkins] differently." *Id.* at 21. For example, when Hawkins inquired about an alternate work schedule, Willis told him, "we don't do that here." *Id.* When Hawkins showed Willis that the collective bargaining agreement allowed for such a schedule, Willis "became very agitated," and his treatment of Hawkins worsened. *Id.*

As to this second complaint, the EEO Office provided Hawkins a Notice of Right to File a Formal Complaint of Discrimination, which "contains clear and unambiguous filing instructions," including a directive to file a complaint within fifteen calendar days of receiving the Notice. Doc. 19 at 24. Despite the clear notice, Hawkins waited twenty-nine days to file his formal complaint. Doc. 26-2 at 3. The Army dismissed the complaint as untimely, doc. 26-6 at 1-2, and the OFO affirmed and denied Hawkins' request for reconsideration, doc. 26-2 at 4.

Hawkins' third complaint, EEO Complaint 382, involved Willis' alleged increasingly poor treatment of him. *See id.* Allegedly, Willis held Hawkins to different standards than other employees by requiring Hawkins to report his breaks, demanding that Hawkins utilize his leave when he arrived a few minutes late to work, and delaying Hawkins' leave forms, causing him to miss a family funeral. *Id.* Willis also gave Hawkins a three out of five on an annual performance review, and when the union requested that Willis substantiate the rating by producing evidence

5

of counseling and training he directed at Hawkins in response to this allegedly poor performance (which he could not do), Willis "became more agitated." *Id.* Hawkins had never received such a low rating previously, and the rating has created serious consequences for his career. *Id.*

Hawkins subsequently received his Notice of Right to file a formal EEO complaint as to this third complaint. Doc. 26-3 at 3. Hawkins filed his formal complaint eighteen days later, and EEO dismissed it as untimely after finding "ample proof" that Hawkins "was in possession of the Notice of Right to File a Formal Complaint of Discrimination." Doc. 26-7 at 1-2. The OFO affirmed the dismissal. *See* doc. 26-3 at 4.

Hawkins filed his final complaint, EEO Complaint 1953, against his co-worker, Diana Willis. Doc. 19 at 16. Leading up to this complaint, Hawkins' co-workers mocked the fact that they had to undergo sensitivity training in response to Hawkins' previous complaints. *Id.* Some of the co-workers criticized the training and the underlying complaints, with one asking, "why do we have to do this BULLSHIT, I have been here . . . for 10+ [years] and never had to do this bull shit," and another responding, "some punk went w[h]ining and now we have to do this." *Id.* For her part, Willis had not spoken to Hawkins for eight months, and yet one morning, while Hawkins was speaking with a co-worker, *id.* at 18, Willis entered the room, greeted Hawkins' co-workers, and then demanded of Hawkins, "what is

6

going on with this BS behind me[?]," *id.* at 16. Hawkins maintains that Willis' statement was a reference to the co-workers discussing the sensitivity training. *Id.* Hawkins immediately left the room and filed his complaint before taking leave to avoid the "[t]oxic [e]nvironment and [h]arassment." *Id.* After receiving his Notice of Right to file a formal EEO complaint against Diana Willis, Hawkins waited until sixteen days later to file his complaint. Doc. 26-4 at 3. The EEO office dismissed it as untimely. Doc. 26-8 at 1-2.

Hawkins subsequently filed this lawsuit, seeking to litigate the claims that form the basis of the four EEOC complaints.

## III. ANALYSIS

Defendants move to dismiss on three grounds: (1) lack of subject-matter jurisdiction over Mark Witt, Danny Bordeaux, and Fred Willis pursuant to Fed. R. Civ. P. 12(b)(1), (2) insufficient service of process on Secretary Mark Esper pursuant to Fed. R. Civ. P. 12(b)(5); and (3) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The court notes that Hawkins failed to address these contentions in his response to the Defendants' motion, and instead simply realleged the claims in his complaint. *See* doc. 36. Consequently, Hawkins has abandoned these claims, and they are "due to be dismissed on those grounds alone." *See e.g.*, *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (citing *Fischer v. Fed. Bureau of Prisons*, 349 F. App'x. 372, 375 n. 2 (11th Cir.

2009)). Still, the court will discuss the Defendants' various contentions in support of their motion below.

### A. Whether the Court Lacks Subject-Matter Jurisdiction over Mark Witt, Danny Bordeaux, and Fred Willis

In his complaint, Hawkins makes claims under Title VII and "[o]ther federal law [pertaining to] [h]arassment, [r]eprisal [and] [r]etaliation," doc. 19 at 3, against Secretary Mark Esper, HQAMC/LOGSA, and Mark Witt, Danny Bordeaux, and Fred Willis, *id.* at 2. The Defendants argue that Hawkins can only pursue claims under Title VII and that the only appropriate Defendant is Secretary Esper. *See* doc. 26 at 11-13. Indeed, "Title VII provides the exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Canino v. United States Equal Employment Opportunity Comm'n*, 707 F.2d 468, 472 (11th Cir. 1983) (citations and quotation marks omitted). And, the head of the agency involved is the only appropriate defendant in a Title VII action under section 717. 42 U.S.C. § 2000e-16(c); *Canino*, 707 F.2d at 472. In that respect, as the Defendants correctly note, the HQAMC/LOGSA is not a proper defendant because it is a sub-agency of the United States Army. *See Lassiter v. Reno*, 885 F. Supp. 869, 873 (E.D. Va. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996) (allowing plaintiff to sue Attorney General, who had supervisory authority over United States Marshal Service, but not USMS or its director because a "plaintiff may not sue more than one department or agency head in his or her official capacity"). Similarly, Hawkins may not pursue

claims against Witt, Bordeaux, and Willis individually because the "[r]elief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also* 42 U.S.C. § 2000e-2(a). Thus, to the extent Hawkins asserts claims against HQAMC/LOGSA, Witt, Bordeaux, and Willis, these defendants are due to be dismissed. The only proper defendant is Secretary Esper.

### B. Whether the Court Lacks Personal Jurisdiction over Secretary Mark Esper

Defendants argue also that the court lacks personal jurisdiction over Secretary Esper and have moved to dismiss the claims against him under Rule 12(b)(5). A motion to dismiss brought pursuant to Rule 12(b)(5) tests the sufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(5). When a defendant contests the sufficiency of service, the plaintiff bears the burden of proving proper service. *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981). And, "[v]alid service of process is a prerequisite for a federal court to assert personal jurisdiction over a defendant." *See Laster v. City of Albany, Georgia, Water, Gas & Light Co.*, 517 F. App'x 777 (11th Cir. 2013).

To serve a United States officer sued in his official capacity, "a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3). This entails:

> (A)(i) deliver[ing] a copy of the summons and of the complaint to the

9

> United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
> (ii) send[ing] a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
> (B) send[ing] a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send[ing] a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1). Relevant here, after three courtesy communications from Defendants notifying Hawkins that he had not properly served the United States and directing him to Federal Rule of Civil Procedure 4(i)(1), *see* doc. 14 and doc. 20, Hawkins attempted to serve Secretary Esper by sending a copy of the summons and complaint to the Army's EEOC Compliance Center located in Fort Belvoir, Virginia. *See* docs. 21; 24 at 3, 6. The Defendants received the filing and returned the service thereafter. Doc. 24. Unfortunately for Hawkins, service to the EEOC Compliance Center is improper. Rather, pursuant to federal regulations, "[t]he Chief, Litigation Division, shall accept service of process for Department of the Army or for the Secretary of the Army in his official capacity." 32 CFR § 516.14. Defendants state the current Chief of the Army's Litigation Division is Colonel Michael D. Mierau. Doc. 26 at 14. By failing to serve Colonel Mierau, the Chief of the Litigation Division, Hawkins has not properly served Secretary Esper with process in accordance with applicable federal regulations and Rule 4.

Rule 4 requires district courts to "extend the time for service for an appropriate period" when "the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). But, "[g]ood cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll County Com'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007). Hawkins has not shown good cause for his failure to serve Secretary Esper. In fact, despite courtesy efforts by the Defendants to explain to him the deficiency in his service, *see* docs. 14 and 20, Hawkins has provided no evidence demonstrating proper service, *see generally* docs. 19 and 36. Hawkins seems to contend instead that any defects in his service were remedied by the receipt of his complaint and summons by Defendants, attaching a copy of the docket and indicating receipt of his first attempt at service, doc. 19 at 9-11. But, "[a] defendant's actual notice is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). And, despite his *pro se* status, Hawkins must "nevertheless . . . conform to procedural rules." *Id.* In other words, in light of his failure to properly serve Secretary Esper, the court does not have personal jurisdiction over the Secretary. Moreover, although district courts have the discretion to extend the period for service of process even in the absence of good cause, *see Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005), giving Hawkins another opportunity to properly serve Secretary Esper would serve no utility because, as discussed below,

the court lacks subject-matter jurisdiction over his claims.

### C. Whether the Government Has Waived Sovereign Immunity as to EEO Complaint 289

Hawkins alleges his claims against the United States Army, a federal agency, and must therefore demonstrate that the United States has waived its sovereign immunity in order for this court to exercise subject-matter jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Id.* And, "the Government's consent to be sued must be construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

Hawkins' EEO Complaint 289 resulted in a Negotiated Settlement Agreement. Doc. 26-1 at 4. When an employee gives knowing and voluntary consent to a Title VII settlement agreement, his Title VII causes of action are released. *Myricks v. FRB*, 480 F.3d 1036, 1040 (11th Cir. 2007). Because Hawkins does not dispute that he knowingly and voluntarily resolved his claims for EEO Complaint 289 by settlement agreement, *see generally* doc. 19, the court finds that he released his Title VII claims under that complaint. Therefore, Hawkins' sole claim regarding this complaint is a purported contract rescission claim, doc. 19 at 20, which is not covered by the sovereign immunity waiver in Title VII. *See Thompson v. McHugh*, 388 F. App'x. 870, 872-73 (11th Cir. 2010) (holding a district court lacked subject-matter jurisdiction to hear an employee's contract rescission claim regarding her

Title VII settlement). Consequently, because the United States has not waived sovereign immunity as to this contract rescission claim, this court lacks subject-matter jurisdiction over this claim.

### D. Whether Hawkins has Failed to Exhaust EEO Complaints 2385, 382, and 1953

Defendants argue that Hawkins failed to timely exhaust his administrative remedies as to his remaining EEO Complaints—2385, 382, and 1953. Doc. 26 at 20-25. Title VII exhaustion requirements, including timely filing, are "a condition to the waiver of sovereign immunity" and consequently are "strictly construed." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990). Relevant here, Hawkins filed EEO Complaint 2385 fourteen days late, doc. 26-2 at 3, Complaint 382 three days late, doc. 26-3 at 3, and Complaint 1953 one day late, doc. 26-4 at 3. Before and after missing these three deadlines, Hawkins successfully navigated the complaint process in EEO Complaint 289, as well as in two complaints not at issue in this case. *See* doc. 7 at 13. Furthermore, he received in each of the complaints a notice, which provided detailed instructions on how to timely file. Docs. 19 at 24, 26-3 at 3, and 26-4 at 3. By missing these deadlines, Hawkins failed to properly exhaust his administrative remedies under Title VII. Moreover, Hawkins alleges no justification for this failure to avail himself of the equitable tolling doctrine.[3] Therefore, because

---

[3] Equitable tolling doctrine allows courts to pause certain procedural deadlines when justice so demands. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding filing

timely filing is a condition to the United States' waiver of sovereign immunity under Title VII, this court lacks subject-matter jurisdiction to hear claims related to Hawkins' EEO Complaints 2385, 382, and 1953.

IV. **CONCLUSION AND ORDER**

For the reasons stated above, the Defendants' Motion to Dismiss, doc. 26, is **GRANTED**. Hawkins' Second Amended Complaint, doc. 19., is **DISMISSED WITHOUT PREJUDICE**. The clerk is **DIRECTED** to close the file.

**DONE** the 13th day of November, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

deadlines for charges of discrimination with the EEOC are subject to waiver, estoppel, and equitable tolling); *Burnett v. New York Central R. Co.*, 380 U.S. 424 (1965) (allowing equitable tolling where plaintiff filed a defective pleading but otherwise actively pursued his claim). However, a plaintiff's failure to exercise due diligence is not grounds equitable tolling. *See Irwin*, 498 U.S. at 95-96 (holding the plaintiff's lawyer's absence from his office did not warrant equitable tolling as it was "at best a garden variety claim of excusable neglect"); *see, e.g., Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007) (holding benefits claimant's limited linguistic and legal experience did not rise to the "extraordinary circumstances warranting equitable tolling" where the Social Security Administration's Appeals Council gave clear filing instructions).